COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Annunziata and Overton
Argued at Richmond, Virginia


KELLY YVETTE TIMBERS

MEMORANDUM OPINION[*] BY
v.   Record No. 2249-97-2   JUDGE ROSEMARIE ANNUNZIATA
                            AUGUST 18, 1998
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MADISON COUNTY
Lloyd C. Sullenberger, Judge

Diana H. Wheeler for appellant.

Marla Graff Decker, Assistant Attorney
General (Mark L. Earley, Attorney General;
Richard B. Campbell, Assistant Attorney
General, on brief), for appellee.


Kelly Yvette Timbers (appellant) challenges the sufficiency

of the evidence in support of her conviction as a principal in

the second degree for distribution of cocaine in violation of

Code § 18.2-248. We hold that the evidence is sufficient to

support her conviction, and affirm.

Appellant rented apartment 109 at Poplar Ridge Apartments.

Sean Campbell, known as "Shy," lived in the apartment with

appellant, and paid the rent and fees for damage to the

apartment. Appellant was not employed, and Campbell earned money

by selling crack cocaine.

Appellant accompanied Campbell on trips to New York,

Washington, D.C., and Maryland to obtain cocaine. Campbell kept

_____

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

a supply of powder and crack cocaine buried in a jar in the woods. Only Charles Hall and Campbell knew the location of the cocaine in the woods. Hall told an officer that Campbell kept the cocaine in the woods to prevent appellant from using it. Campbell "cooked" the powder cocaine into crack cocaine, a small amount at a time, both in appellant's apartment and other apartments, and kept only a small supply on his person. Appellant assisted Campbell with "cooking" the cocaine. On one occasion, appellant was present while Campbell "cooked" the cocaine, but did not assist.

Hall and Sylvia Brock stood outside the apartment complex and fielded requests for cocaine. After receiving a request, Hall or Brock would go to Campbell in apartment 109, or one of several other apartments, to obtain cocaine. Appellant was sometimes present when Campbell transferred cocaine to Hall or Brock.

Campbell also sold cocaine directly from appellant's apartment and other apartments. Appellant was present at least some of the time Campbell sold the cocaine directly out of her apartment.

On August 28, 1996, police responded to a report of domestic violence by Campbell against appellant. While one officer talked to appellant, another officer followed, questioned, and apprehended Hall. The police seized a jar containing powder cocaine which Hall had placed behind the apartment building.

Hall initially claimed that the cocaine belonged to him, but later admitted that he worked for Campbell, and that the cocaine belonged to Campbell. The jar was the same jar Campbell used to store his cocaine. The street value of the cocaine in the jar was thirteen to fourteen thousand dollars in crack cocaine form.

The Commonwealth charged appellant with the manufacture, sale, or distribution of cocaine. At trial, after the Commonwealth rested, appellant moved to strike the Commonwealth's evidence on the basis that no evidence showed that she was directly involved in criminal activity. In response, the Commonwealth argued that appellant acted as a principal in the second degree because she facilitated Campbell's sale of cocaine. The court denied the motion to strike. The court, sitting without a jury, found that appellant "aided and abetted Campbell's distribution and to some extent manufacturing of cocaine," and found her guilty as a principal in the second degree. The court sentenced appellant to five years incarceration, with three years and one month suspended.

Appellant argues that the trial court erred in finding her guilty as a principal in the second degree of the manufacture and distribution of cocaine. On appeal, we review the evidence "'in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom.'" Phoung v. Commonwealth, 15 Va. App. 457, 460, 424 S.E.2d 712, 714 (1992) (quoting Traverso v. Commonwealth, 6 Va. App. 172,

-3-

176, 366 S.E.2d 719, 721 (1988)).  "The judgment of the trial court is presumed correct, and we are required to affirm that judgment unless it is plainly wrong or without evidence to support it."  McGill v. Commonwealth, 24 Va. App. 728, 732, 485 S.E.2d 173, 175 (1997) (citation omitted) (citing, inter alia, Code § 8.01-680).

"In the case of a felony, every principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree."  Allard v. Commonwealth, 24 Va. App. 57, 62, 480 S.E.2d 139, 141 (1997) (citing Code § 18.2-18). "To hold an accused accountable as a principal in the second degree, the Commonwealth must show that the accused was present, aiding and abetting, and intended his or her words, gestures, signals, or actions to in some way encourage, advise, urge, or . . . help the person committing the crime to commit it."  McGill, 24 Va. App. at 733, 485 S.E.2d at 175 (citing Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986)).

Mere presence during the commission of a crime is not sufficient to render a person guilty as a principal in the second degree.  Pugliese v. Commonwealth, 16 Va. App. 82, 93, 428 S.E.2d 16, 25 (1993) (quoting Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 316 (1942)).  However, "'proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the [trier of fact] to infer

that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same.'" Id. at 93-94, 428 S.E.2d at 25 (quoting Foster, 179 Va. at 100, 18 S.E.2d at 316).

The record is clear that Campbell, while living in appellant's apartment, manufactured and distributed crack cocaine. The evidence supports appellant's conviction as a principal in the second degree in both the manufacture and distribution of cocaine.

With respect to the manufacture of cocaine, the record shows that appellant accompanied Campbell on trips to purchase cocaine. Appellant provided Campbell with the use of her apartment to "cook" cocaine, and was present when Campbell "cooked" the powder cocaine into crack cocaine. Appellant also directly assisted Campbell with "cooking" the cocaine.

With respect to distribution of cocaine, the record shows that appellant knowingly allowed Campbell to use her apartment as a distribution center for cocaine. Appellant was present in her apartment when Campbell transferred cocaine to Hall and Brock to pass along to customers. Appellant was also present when Campbell sold cocaine directly to customers in appellant's apartment. Appellant was unemployed, and Campbell paid the rent and damages fees for her apartment. The trial court was free to draw the reasonable inference that appellant knew that the money Campbell used to pay the bills was derived from the drug sales he

routinely made in her presence.

Thus, the evidence clearly shows that appellant was present during the commission of the crime and aided and abetted the manufacture and distribution of cocaine. The Commonwealth did not present direct evidence of appellant's intent, but "'[b]ecause direct proof of intent is often impossible, it must be shown by circumstantial evidence.'" White v. Commonwealth, 25 Va. App. 662, 668, 492 S.E.2d 451, 454 (1997) (en banc) (quoting Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988)). We must respect reasonable inferences drawn by the finder of fact from the evidence presented at trial. Phoung, 15 Va. App. at 460, 424 S.E.2d at 714 (citing Traverso, 6 Va. App. at 176, 366 S.E.2d at 721). The court drew a reasonable inference that appellant intended her actions of accompanying Campbell to buy drugs, helping Campbell "cook" cocaine, providing Campbell a location for the sale of drugs, and profiting from his drug sales to assist Campbell in the manufacture and distribution of cocaine.

Accordingly, we affirm.

Affirmed.