COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Felton
Argued at Chesapeake, Virginia


MONICA AVIS WHITEHEAD

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0771-05-1                  JUDGE ROBERT P. FRANK
                                                    MARCH 14, 2006

COMMONWEALTH OF VIRGINIA



              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                         Junius P. Fulton, III, Judge

        Jeffrey M. Hallock for appellant.

        Donald E. Jeffrey, III, Assistant Attorney General (Judith Williams
        Jagdmann, Attorney General; Denise C. Anderson, Assistant
        Attorney General, on brief), for appellee.


        Monica Whitehead, appellant, was convicted, in a bench trial, of second-degree murder, in

violation of Code § 18.2-32.  On appeal, she challenges the sufficiency of the evidence, contending

that since her "co-actors" acted in the "heat of passion," upon reasonable provocation, she cannot be

guilty of any crime greater than voluntary manslaughter.  For the reasons stated, we affirm her

conviction.

                                      BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987)).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence establishes that on August 5, 2003, Lorraine Gibbs advised appellant that Eddie Richardson, the homicide victim, had sodomized Gibbs' nine-year-old son, ME. After hearing of the sexual attack, appellant suggested they go to Richardson's house and retrieve Gibbs' belongings. Appellant asked two teenage boys, Brian Latham and Wes Rice, to accompany her. The two teenagers, appellant, and Gibbs observed injury to ME's rectum. Appellant told Latham and Rice, "let's go over and . . . 'F' him up." Appellant instructed the boys to "get [Richardson] for me."

Latham tried to kick down the door to Richardson's room "[b]ecause she was, like, get him because the dude had - - they said Mr. Richardson had raped on the little boy." Latham characterized his feelings as "angry" and testified at trial that he lost all reason.

Ultimately, Rice kicked down the door. They dragged Richardson out of the room. Richardson had a wrench in his hand. Appellant "charged" Richardson and hit him in the back of the head with a metal folding chair, holding the chair with both hands. Rice then hit Richardson with an ashtray, and Richardson fell to the floor. Latham and Rice continued to kick, stomp, and beat Richardson until he died.

Appellant was present during the entire attack, which lasted approximately five minutes. At one point, a downstairs neighbor appeared, inquiring as to what was happening. Appellant told the neighbor to leave, explaining that the fight was none of his business.

After appellant and the two boys had beaten Richardson to death, they went back to appellant's house where she cleaned the blood off of them. The police arrived, and appellant never told them that Richardson had been beaten. Appellant told ME not to identify Latham or Rice as the attackers, but only that he did not see who committed the offense.

When initially interviewed by police, appellant denied any knowledge of the incident and said that she was not inside the premises where the beating occurred. She later admitted being

- 2 -

inside, but claimed she did not know who the attackers were.  Later, she identified the attackers but denied any involvement.  She later admitted throwing the chair at Richardson.  Appellant denied saying anything to incite the teenagers.  Indeed, she later testified at trial that she was not angry with Richardson and did not believe he "raped" ME.

The medical examiner testified Richardson, while having numerous injuries to his brain, his face, chest, and other parts of his body, died from "blunt force head injuries with acute blunt force chest injuries contributing."  The doctor indicated Richardson was "beaten to death."

At the conclusion of all the evidence, appellant moved to strike the evidence, conceding that she did not act in the heat of passion but that Latham and Rice did.

### ANALYSIS

At trial and on brief, appellant did not claim *she* acted in the "heat of passion."[1]  Instead, she argues that because the two teenagers, as principals in the first degree, acted in the "heat of passion," she, as a principal in the second degree, can only be found guilty of voluntary manslaughter, not second-degree murder.[2]  Essentially, appellant argues that her level of criminal

---

[1] At oral argument appellant contended that she acted in the heat of passion.  In her brief, appellant did not seek review on this ground.  Consequently, we will not address this argument on appeal.  See Rule 5A:20.

[2] Appellant's questions presented are:

> 1.  If a person kills as a result of "heat of passion," does his co-actor who aids and abets adopt the same level of culpability?
>
> 2.  Would the "triggerman" rule suggest that a killing committed by a person while under "heat of passion" cannot result in a finding of malice as to one who aids and abets the killer?
>
> 3.  If the state of mind of a principle [sic] in the first degree is adopted as the state of mind of a principle [sic] in the second degree, which trial evidence is dispositive of the state of mind of the principle [sic] in the second degree?  That person's trial evidence or the trial evidence of the principle [sic] in the first degree?

intent cannot rise above that of the principals in the first degree, as a principal in the second degree would share their criminal intent. Appellant bases her argument on the faulty premise that she was a principal in the second degree.

A principal in the first degree is the actual perpetrator of the crime. "A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." Jones v. Commonwealth, 208 Va. 370, 372, 157 S.E.2d 907, 909 (1967). One is a principal in the second degree if he or she "intended his or her words, gestures, signals, or actions to in some way encourage, advise, urge, or in some way help the person committing the crime to commit it." McGill v. Commonwealth, 24 Va. App. 728, 733, 485 S.E.2d 173, 175 (1997).

As the Supreme Court of Virginia concluded in Muhammad v. Commonwealth, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005), "[w]here two people engage in criminal conduct together, as where they participate in striking and killing another, each participant is a principal in the first degree in the homicide." In Muhammad, a sniper case, both "the spotter" of the victim and the actual shooter were principals in the first degree.

Here, the trial court concluded that appellant "was an active participant in the beating that resulted in the murder of [Richardson]." Appellant and the two teenagers acted jointly to accomplish the killing. The fact finder could reasonably infer that appellant's striking Richardson on the back of the head with a metal chair enabled the teenagers to finish beating Richardson to death. Richardson had "multiple" sites of impact on his head. The medical testimony indicated Richardson died from "blunt force head injuries . . . ."

---

As to appellant's second question, appellant made no argument nor cited any authority in support of her argument. By failing to do so, appellant has violated the provisions of Rule 5A:20(e). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Thus, we will not consider this issue on appeal.

While the medical examiner could not determine which specific blow to the head caused Richardson's death, she testified it was the "cumulative effect or aggregate effect" of the blows to the head that caused death.  Thus, it was reasonable for the fact finder to determine that appellant jointly participated in the fatal beating.  See Coppola v. Commonwealth, 220 Va. 243, 256, 257 S.E.2d 797, 806 (1979); see also Strickler v. Commonwealth, 241 Va. 482, 495, 404 S.E.2d 227, 235 (1991) (holding that where two or more persons take a direct part in inflicting fatal injuries, each joint participant is an "immediate perpetrator" under the capital murder statutes).

Appellant did more than encourage, advise, urge or facilitate the two teenagers to kill Richardson.  The three acted jointly, the result of that joint action being the beating death of Richardson.

Since we conclude that appellant was a principal in the first degree, we do not address whether the teenagers acted in the "heat of passion."

We affirm the judgment of the trial court.

Affirmed.